## Commonwealth v. Hare et al.

*James F. Malone, Jr.*, district attorney, for Commonwealth.

*Charles J. Margiotti*, for defendants.

ALPERN, J., October 19, 1954.—The above defendants, together with eleven other defendants, were in-

dicted by the grand jury on October 1, 1954, for conspiracy to violate the Pennsylvania statute which makes it unlawful for any officer or employe of the Commonwealth of Pennsylvania to demand the payment of an assessment by public employes to help defray the cost of a political campaign. The offense is popularly referred to as "macing" and constitutes a violation of the election laws: Act of April 6, 1939, P. L. 16, 25 PS §2374.

Among those indicted are cabinet and high administrative officials of the Commonwealth of Pennsylvania. Defendant Artemas C. Leslie is the Insurance Commissioner of the Commonwealth of Pennsylvania. Frederick P. Hare is the administrative assistant to the Governor of the Commonwealth. George A. Nally is Controller of the Department of Revenue.

On October 4, 1954, a petition was presented in behalf of the four defendants named above, asking the court to set the cases for trial immediately on the ground that the public interest requires that an accused public official be given a speedy trial. The petition asserted that the district attorney has indicated that the cases would not be set down for speedy trial.

An answer was filed by the district attorney denying that the cases would not be tried with due expedition. The district attorney asserted that the testimony taken before the indicting grand jury had not been transcribed and that numerous important cases upon which indictments were previously found were scheduled for trial at this time. The district attorney opposed the granting of the petition.

At the oral argument and in his brief, the district attorney took the position that the preparation of the trial list is in the exclusive control of the district attorney. The district attorney maintained that, in the absence of oppressive action by the district attorney, the court is without power to accelerate criminal trials.

The fundamental questions presented by these proceedings are:

1. Does the court have the power to advance the trial date of criminal cases?

2. Do the circumstances of this case warrant an advancement?

1. *The Court Has Control Over the Advancement and Postponement of All Cases.*

The right to a speedy trial is guaranteed by the Constitution of the United States and by the Constitution of the Commonwealth of Pennsylvania (sixth amendment, Constitution of the United States, art. I, sec. 9, Pennsylvania Constitution). The constitutional mandate resulted from decades of tyrannical action by those in authority. The oppressive tactics of prosecutors under the Crown impelled the framers of our Constitutions, both Federal and State, to erect all possible bulwarks against the misuse of power.

The mandate of the Constitution that those accused be given speedy trials is an important safeguard of the rights of the people. Unfortunately, the backlog of criminal cases, the necessity of preparing cases for trial with limited staffs, the finding and subpoenaing of witnesses, inevitably cause delays. A *speedy* trial is not an *immediate* trial: 39A Words & Phrases 489; State v. Mango, 520 O. 200, 114 N. E. 2d 499, 500 (1953).

In normal course, the office of the district attorney lists cases for trial. The district attorney is in position to know the availability of witnesses, the length of time a case will require, the preparation that has been made and the trial schedules of the more experienced assistants, in a way that the court could not possibly know. The fact that the trial list is prepared by the district attorney does not, however, limit the power of the court to advance cases or postpone

cases where the interest of justice requires such action.

Litigants have a right to look to the courts for protection in assuring their constitutional right to a speedy trial. Significantly, all postponements of cases listed for trial must be approved by the court. Certainly, if the court's approval is required for postponement, the court has the power to accelerate a case on the trial list. In proper instances, the courts have exercised their power to advance as well as to postpone cases.

The importance of protecting the constitutional right of a defendant to a speedy trial in a criminal action has always been recognized. Judge Thomas Cooley, in his noted legal treatise, Cooley's Constitutional Limitations, 8th ed., vol. 1, p. 646, states:

"In this country, where officers are specially appointed or elected to represent the people in these prosecutions, their position gives them an immense power for oppression; and it is to be feared they do not always sufficiently appreciate the responsibility, and wield the power with due regard to the legal rights and privileges of the accused. When a person charged with crime is willing to proceed at once to trial, no delay on the part of the prosecution is reasonable, except only that which is necessary for proper preparation and to secure the attendance of witnesses."

A pertinent statement on the power of the court is contained in 53 Am. Jur., 30 §5, where it is stated:

". . . a court may in its discretion try a case out of the regular order, and its action in this respect will be upheld in the absence of an abuse of discretion, as where it does not appear that the party objecting suffered any prejudice by reason of the advancement of the case."

The power of courts to expedite trials under proper circumstances is discussed in the following authorities and decisions: 53 Am. Jur. 32; 21 A. L. R. 178; 82

A. L. R. 1443; 64 C. J. 62; 2 Sadler on Criminal Law 616; Jennings v. Lehigh Valley Railroad Co., 3 Lack. L. N. 104 (1897) ; Clyde Coal Co. v. Pittsburgh & Lake Erie Railroad, 13 Dist. R. 415 (1913) ; Com. v. Winnemore, 2 Brewster 378 (1867) ; State v. Kelly, 27 N. M. 412, 202 Pac. 524 (1921) ; Burdick v. Mann, 60 N. D. 710, 236 N. W. 340; and Morrison v. Hedenberg, 138 Ill. 22, 27 N. E. 460 (1891) ; Commonwealth v. Smith, 27 Dist. R. 141 (1918).

It has always been recognized that cases involving public officers fall within a special category. It is not out of deference to public officers, but because of the impact upon the public of charges of crime against persons holding high office, that cases involving mayors, councilmen, cabinet officers, judges, and other important public officers, are given priority. An attack on the integrity of public officials requires the speediest possible determination of their guilt or innocence.

On the civil side of the court, actions of quo warranto affecting title to public office, actions of mandamus involving the performance of public duties and suits against defaulting public officers, are given priority. The need for determining as quickly as possible the questions involving public officials impels the courts, in the interest of the general public, to dispose of cases involving public officers with the greatest celerity.

Every defendant charged with a crime has a constitutional right to a speedy trial, and that right should be protected. It cannot be said, however, that every case of larceny, breach of the peace, burglary, or even murder, involves the confidence of the people in their government as does a case involving an accusation against high public officers entrusted with governmental functions.

It is important that the guilt or innocence of public officials accused of crime be determined as quickly as possible. If a public officer has violated his trust, he

should not be allowed to continue in office. If he is innocent, he should be exonerated as quickly as possible so that public confidence in government will be restored.

The occupational hazards involved in mining and the manufacture of explosives and combustibles are recognized. Preventive measures have been required by law to minimize as far as possible the dangers involved in certain occupations. The hazards of public office are just as real, but there are few protective devices to minimize the danger. Ordeal by headline has made public service one of the most hazardous of all occupations. It is in the interest of the public that charges that are grounded on fact be proved as quickly as possible and that accusations meant to harass and embarrass be shown up for what they are. Speedy trial is a means to that end.

While *accusations* and *convictions* are both 10-letter words, there is a world of difference between them. The public will learn the difference only if trials involving public officers have priority on the criminal trial lists. This would reduce the hazards of holding public office by establishing guilt or vindication as soon as possible after accusations are made. The holding of public office by responsible citizens should not be made so hazardous as to attract only the thick-skinned.

This court has complete power to accelerate cases of public importance and will do so in every instance where the facts warrant such acceleration.

2. *The Circumstances of This Case Warrant Advancement on the Trial List.*

The second question presented is whether, under the facts of this case, the petition for advancement should be granted. The indictment was returned on October 1, 1954. On October 4th, three days later, a petition

for advancement was filed. While the statement was made in paragraph 6 of the petition that the district attorney's office had indicated that the matter would not be set down for speedy trial, this statement is denied by the district attorney, who states that he intends to try these cases promptly.

The proper procedure for the petitioners to have followed was to have petitioned the district attorney to place the matter down for trial. It is only when the district attorney fails to act under proper circumstances that the court would normally intervene.

In Trial by Jury, by Robert von Moschzisker, former Chief Justice of Pennsylvania, the following pertinent statement appears (sec. 118, p. 86):

". . . In Philadelphia, criminal cases are placed on the list by the district attorney's office. If you want such a case ordered down, you first make a request of that official; if he refuse, apply to the court, on written petition, with a copy served on the prosecuting attorney, or by going into the appropriate court and making an oral motion that the case be listed for trial."

Because of the desirability of determining the questions raised by the petition as promptly as possible, the court will consider the issues raised in the case at bar as though an application for advancement had been filed with the district attorney and had been rejected.

It cannot be said that on October 4, 1954, when the petition for advancement was presented, any delay had been shown in the office of the district attorney. The indictment was returned on October 1, 1954, only three days earlier. The trial list for October had already been prepared. Witnesses had been subpoenaed. Important felony cases, where defendants were not on bond, were listed for trial.

The Constitution does not require an immediate

trial. It requires a speedy trial. The two are not synonymous. As the court stated in the recent case of State v. Mango (Ohio), 520 O. 200, 114 N. E. 2d 499, 500 (1953):

"The right to a 'speedy trial' guaranteed by our Constitution does not entitle the accused to an immediate trial. A 'speedy trial' to which a defendant in a criminal case is entitled is one conducted according to fixed rules, regulations and proceedings of law free from vexatious, capricious and oppressive delay created by the ministers of justice."

Preferential position on the trial list normally requires 10 days' notice to the trial list officer on the civil docket. See Standard Pa. Practice by Goodrich-Amram, secs. 215-3, 215-4:

"Under Rule 215, any party may apply for the preferential listing of a case entitled by Rule 214 to a preference on the trail lists. . . .

"Rule 215 does not expressly limit the time within which a preferential listing must be demanded of the trial list officer, except that the notice to the officer can not be given less than ten days before the trial. . . ."

The request of petitioner that the trial of these cases be had "tomorrow" was not a realistic request. Certain important testimony had not yet been transcribed. There was need for preparation of the case for trial. The Commonwealth must be given every reasonable opportunity to prepare its case against defendants, just as defendants must be given every opportunity for a fair and impartial trial.

Because these cases involve serious accusations against public officials, the court is of the opinion that the cases should be advanced on the trial list. The November trial list in criminal court is now in the

process of preparation. It is in the public interest that the 15 cases involving illegal assessments, including those of defendants in this proceeding, be placed on the November trial list and tried without delay. The court so directs.

### Order of Court

And now, October 19, 1954, the court directs James F. Malone, Jr., district attorney, to list on the November trial list for immediate trial the cases of the 15 defendants arising out of the indictments returned by the grand jury on October 1, 1954, for conspiracy to violate the Act of April 6, 1939, P. L. 16, prohibiting political assessments. The rights of defendants in other criminal proceedings, who are not under bond, and whose cases are listed for trial in November, shall not be impaired by this order.